IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

CINCINNATI INSURANCE CO.,

    Plaintiff,

v.

WESTERN WORLD INSURANCE CO.,

    Defendant.

No. 6:20-cv-02145-AA

**OPINION & ORDER**

AIKEN, District Judge.

This case comes before the Court on cross motions for summary judgment filed by Plaintiff Cincinnati Insurance Co., ECF No. 20, and by Defendant Western World Insurance Co., ECF No. 22. The Court concludes that these motions are appropriate for resolution without oral argument. For the reasons set forth below, Defendant's Motion is GRANTED and Plaintiff's Motion is DENIED.

### LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury

could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## BACKGROUND

Plaintiff Cincinnati Insurance Company is an insurance company based in Ohio. Compl. ¶ 2. ECF No. 1. Plaintiff issues Commercial General Liability Policy No. EPP 037 76 85/ EBA 037 76 85 ("Plaintiff's Policy") to provide coverage for MCH Property Management LLC dba Partners Property Management & Sales ("PPM") for the policy period March 15, 2016 to March 15, 2017. Davenport Decl. Ex. C. ECF No. 21. Plaintiff's Policy specifies that it "is excess over any other valid and collectible insurance available to you." Davenport Decl. Ex. C, at 26. As such, Plaintiff's Policy only provides for a duty to defend if another insurer has a duty to defend the insured. *Id.* at 18.

Defendant Western World Insurance Company is an insurance company based in New Jersey. Compl. ¶ 3. Defendant issued Commercial Lines Policy No. NPP8318698 ("Defendant's Policy") to provide coverage for Birdnest Mobile Estates, LLC ("Birdnest") for the policy period September 20, 2016 through September 20, 2017. Obernesser Decl. Ex. 1. ECF No. 24. Douglas R. Bird is the President of Bird Resource Management, Inc., which is the General Partner of Bird Family Partners, LTD, and Bird Family Partners is the entire membership of Birdnest. Baker Decl. Ex. 2, at 2. ECF No. 23. Bird was the manager of Birdnest and controlled the day-to-day operations of the Park though hired property managers. *Id.*

Birdnest entered into two successive Management Agreements with PPM under which PPM was appointed as Birdnest's agent to "rent, lease and manage" Birdnest's property, a mobile home park at 60311 Cheyenne Road in Bend, Oregon ("the Park"). Davenport Decl. Ex. A, at 12-18. The Management Agreements required Birdnest to procure and maintain general liability insurance naming PPM as an additional insured. *Id.* at 13, 18. The parties do not dispute that, under certain conditions, PPM qualifies as an "additional insured" under Defendant's Policy.

In May 2015, Robin and James Currin entered into month-to-month rental agreement with Birdnest for Space 19 in the Park. Baker Decl. Ex. 2, at 2. Beginning in the summer of 2015, sewage began to flow into the Currin's space from the Park's septic system. *Id.* at 3. This became a regular occurrence. *Id.* These problems were reported to Bird, including through a March 2015 report by the Oregon Department of Environmental Quality. *Id.* at 3-4. In the fall of 2015, Defendants did maintenance

on the septic system, which corrected the problem temporarily. *Id*. at 4. However, by November 2015, sewage once again began to flow into Space 19. *Id*. The Currins attempted to report the issue to Bird but found that he had blocked their numbers. *Id*.

In March 2017, PPM initiated a forcible entry and detainer ("FED") action in Deschutes County Circuit Court to evict the Currins for non-payment of rent. Baker Decl. Ex. 2, at 5. The Currins responded that the premises was not habitable because of Birdnest's and PPM's failure to make repairs, leaving the sewer inoperable and the water undrinkable. *Id*.

On March 22, 2017, the Deschutes circuit court entered judgment in favor of the Currins, awarding them $500 in damages for the "deplorable conditions and lack of action by landlord," and waiving the Currins' rent "unless or until sewage conditions are remedied and confirmed remedied by a licensed, bonded, and insured professional." *Id*. The Currins' rent was also waived until "the drinking water underwent lab analysis by a certified lab to determine its fitness for human consumption." *Id*.

Raw sewage continued to overflow on to the Currins' space, despite desultory repair efforts by Birdnest and PPM. Baker Decl. Ex. 1, at 6. In April 2017, the Currins brought a lawsuit against Bird and Birdnest in Deschutes County Circuit Court Case No. 17CV15370, seeking declaratory and injunctive relief, as well as damages related to Birdnest's failure to maintain a functioning sewage system and potable water. Baker Decl. Ex. 6.


Despite the circuit court's order abating the Currins' rent, Birdnest filed a second FED action seeking to evict the Currins' for non-payment of rent. Baker Decl. Ex. 7. In response, the Currins brought an action for contempt against PPM and Birdnest alleging that the second FED action was brought in contravention of the circuit court's order and judgment in the first FED action. Baker Decl. Ex. 8. The three actions (the Currins' civil action, the second FED action by PPM and Birdnest, and the Currins' contempt action) were consolidated and the Currins filed an amended complaint. Baker Decl. Decl. Ex. 2. After extended litigation, the consolidated action concluded with a substantial judgment in the Currins' favor. Baker Decl. Ex. 9, at 3. Bird declared bankruptcy and, in connection with the voluntary dismissal of Bird's bankruptcy petition, the Currins agreed to settle their claims for the sum of $405,000. *Id.* at 4.

Despite lengthy litigation, neither Birdnest nor PPM tendered the Currin lawsuits Defendant for defense or indemnity. Obernesser Decl. ¶ 3.

On February 14, 2020 Birdnest brough a suit for breach of contract against PPM in Deschutes County Circuit Court, Case No. 20CV07846. Baker Decl. Ex. 1. The suit alleged that PPM breached its contract with Birdnest by failing to inspect, maintain, and repair the Park as required by the Management Agreements. *Id.* at 2. The suit alleged that the Currins has notified PPM of the issues with the septic system and that PPM failed to investigate, assess, or repair the habitability issues raised by the Currins. *Id.* at 5-6. The suit further alleged that, as discussed above,

the Currins sued Birdnest and, as a result, Birdnest was liable for a substantial judgment in favor of the Currins. *Id.* at 6.

The complaint in Case No. 20CV07846 brings a single claim for breach of contract against PPM alleging that PPM "was grossly negligent in managing the Park and materially breached its obligations" under the Management Agreements. Baker Decl. Ex. 1, at 7-8. The complaint sought damages in the amount of $339,371.59, plus attorney fees and costs. *Id.* at 9.

As relevant to this case, Plaintiff has undertaken to defend PPM in the breach of contract action, Case No. 20CV07846, pursuant to Plaintiff's Policy. On April 1, 2020, Plaintiff "formally tender[ed] the matter to [Defendant] for defense and indemnification," pursuant to Defendant's Policy on the basis that PPM was an additional insured under Defendant's Policy. Obernesser Decl. Ex. 2. On May 5, 2020, Defendant declined the tender and refused to join in the defense of PPM on the basis that coverage was not triggered by the allegations in the underlying breach of contract complaint. Second Davenport Decl. Ex. A, at 3-4. ECF No. 27.

The issue of insurance coverage proved significant to the underlying breach of contract action. In a subsequent motion to amend the complaint in Case No. 20CV07846, Birdnest's counsel sought to clarify that

> In general terms, Birdnest contends that [PPM] is not entitled to coverage because Birdnest is not seeking damages because of 'bodily injury' or 'property damage' as required by the coverage grants under the [insurance] policies. Instead, Birdnest is seeking purely economic damages for attorney fees and money judgment that it became liable to pay in a separate lawsuit with its tenants that arose from [PPM]'s breach of its contractual obligations as Birdnest's property manager. In other words, defendant could not have been deprived of any insurance

Page 6 – OPINION & ORDER

> benefits as an insured or additional insured under Birdnest's general liability policies because this action does not trigger coverage under those policies in the first place.

Baker Decl. Ex. 10, at 2-3.

On February 22, 2021, the Deschutes circuit court granted summary judgment in favor of PPM in Case No. 20CV07846 on the basis that Birdnest had waived its claim against PPM by agreeing to obtain insurance for the benefit of PPM.

Birdnest appealed and the Oregon Court of Appeals reversed the circuit court's decision in *Birdnest Mobile Estates, LLC v. MCH Property Management, LLC*, 323 Or. App. 542 (2023). On appeal, Birdnest argued that it did not waive its claim against PPM because the insurance it was required to procure under its management agreements would not have covered the claims at issue in the breach of contract suit between Birdnest and PPM. *Id.* at 549-550. The Court of Appeals concluded as follows:

> We understand the rule applied in *Waterway Terminals* [*v. P.S. Lord*, 242 Or. 1 (1965)] and *Koennecke* [*v. Waxwing Cedar Prod.*, 272 Or. 639 (1975)], and considered in *Koch* [*v. Spann*, 193 Or. App. 608 (2004)] to be that where the bargained for but not obtained insurance would have covered the damages at issue in the case, the party who agreed but failed to obtain such insurance waived its claim against the contractual counterparty. In this case, there is no dispute that [PPM] bargained to be covered as a named additional insured in a "general liability insurance" policy with coverage "of not less than $500,000.00." And that clause appears to be an allocation of risk, just as [PPM] contends. But [PPM] presented no evidence from which all reasonable factfinders would have to conclude that the insurance contemplated by that clause would "cover[ ] loss" arising from [PPM]'s conduct alleged here, *i.e.*, the loss alleged caused by [PPM] breaching its contract with Birdnest through gross negligence. There is no basis to conclude that, in order to give [PPM] the "benefit of its bargain" with Birdnest for Birdnest to purchase insurance naming [PPM] as an additional insured, Birdnest's claims against [PPM] must be barred by the doctrine of waiver.

*Birdnest Mobile Estates*, 323 Or. App. at 551-52 (internal citations omitted).

As a result, the Oregon Court of Appeals held that the circuit court had erred by granting summary judgment in favor of PPM and the decision was reversed and remanded to the Deschutes County Circuit Court. *Birdnest Mobile Estates*, 323 Or. App. at 552.

## DISCUSSION

This is an action for declaratory judgment, contribution, and indemnification. Plaintiff asserts that, pursuant to Defendant's Policy, Defendant is obliged to defend and indemnify PPM in the underlying breach of contract action between Birdnest and PPM. Defendant contends that it was not obliged to defend or indemnify PPM in the breach of contract lawsuit because (1) the suit does not allege any potentially covered property damage; (2) Birdnest knew of the sewage issue before Defendant's Policy took effect; (3) the lawsuit does not allege an "occurrence" within in the meaning of Defendant's Policy; (4) the pollution exclusion in Defendant's Policy applies to bar coverage; (5) "by agreeing to provide PPM with additional insured coverage via the Western World Policy, Birdnest waived any of its claims against PPM that could have been covered by the Western World Policy,"; and (6) PPM never tendered the breach of contract lawsuit to Defendant for coverage and tender was instead made by Plaintiff.

### I.   Relevant Law Regarding Interpretation of Insurance Policies

A federal court, sitting in diversity, applies state law in interpreting an insurance policy. *Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d

1142, 1145 (9th Cir. 2008). Under Oregon law, interpretation of an insurance policy is a question of law. *Cain Petroleum Inc. v. Zurich Am. Ins. Co.*, 224 Or. App. 235, 241 (2008).

"The task in determining the meaning of a policy is to ascertain the intent of the parties, based on the working of the policy itself." *Cain Petroleum*, 224 Or. App. at 241 (citing *Totten v. New York Ins. Co.*, 298 Or. 765 (1985) and *Groshong v. Mut. of Enumclaw Ins. Co.*, 329 Or. 303, 307 (1999)). "Issues of contractual intent are determined by the objective manifestations of the parties based on the terms that they use and not on what they subjectively believe that the terms mean." *Employers Ins. of Wausau v. Tektronix, Inc.*, 211 Or. App. 485, 503 (2007).

In determining the parties' intent under Oregon laws, the court follows the analytical framework set out in *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Oregon*, 313 Or. 464, 470-71 (1992). The *Hoffman* framework first requires the court to determine whether the insurance policy defines the provision, term, or phrase at issue. If expressly defined, the court must apply the provided definition. *Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 650 (2006).

When a policy does not define the phrase, the court must look to its plain meaning and a phrase has a plain meaning if it is susceptible to only one plausible interpretation. *Holloway*, 341 Or. at 650. If the court determines there are two or more plausible interpretations of the phrase, the court must determine whether the interpretations "withstand scrutiny." *Id.* A phrase withstands scrutiny if it continues to be reasonable after the interpretation are examined in light of, inter alia, the

particular context in which the phrase is used in the policy and the broader context of the policy as a whole. *Id.*; *Bresee Homes Inc. v. Farmers Ins. Exch.*, 353 Or. 112, 122 (2012) (the court must "construe the text of the policy as a whole, rather than view particular parts of the policy in isolation.").

If a single interpretation withstands scrutiny, the court must apply that interpretation. *Hoffman*, 313 Or. at 472. Where more than one interpretation withstands scrutiny, the court must conclude that the phrase is ambiguous. *Cain Petroleum*, 224 Or. App. at 241 (holding that "ambiguity" is a term of art referring to multiple, reasonable interpretations of the policy.). If the Court concludes that a term or phrase is ambiguous under this framework, "the ambiguity cannot be permitted to survive" and the phrase must be construed against the drafter. *Hoffman*, 313 Or. at 470-71.

Whether an insurer has a duty to defend and indemnify is also a question of state law. *Allstate Ins. Co. v. Morgan*, 123 F. Supp.3d 1266, 1272-73 (D. Or. 2015). The duty to defend is broader than the duty to indemnify and courts evaluate the duties separately. *Id.* A duty to defend is triggered by the allegations in the underlying pleading, while the duty to indemnify is proven by facts establishing a right to coverage. *Id.* at 1273. "Although an insurer's duty to defend depends on the pleading, the insurer has a duty to defend only 'if the claim made against the insured is one covered by the insurer.'" *Id.* (quoting *Casey v. Nw. Sec. Ins.*, 260 Or. 485, 489 (1971)). The insured bears the burden of proving coverage while the insurer has the burden of proving exclusion from coverage. *ZRZ Realty Co. v. Beneficial Fire & Cas.*

*Ins. Co.*, 349 Or. 117, 127 (2010). If the insurer can prove that there is no coverage under the policy, the insurer can establish that it has neither a duty to defend nor to indemnify. *Allstate Ins. v. Morgan*, 123 F. Supp.3d at 1273.

Whether an insurance provider has a duty to defend is determined by examining the four corners of the insurance contract and the underlying complaint. *W. Hills Dec. Co. v. Chartis Claims, Inc.*, 360 Or. 650, 653 (2016). An insurer has a duty to defend an action "if the complaint filed against the insured 'could, without amendment, impose liability for conduct covered by the policy.'" *U.S. Fid. & Guar. Co. v. Star Techs., Inc.*, 935 F. Supp. 1110, 1113 (D. Or. 1996) (quoting *Ledford v. Gutoski*, 319 Or. 397, 399-400 (1994)). "Conversely, if the underlying complaint does not contain allegations of covered conduct, then the insurer has no duty to defend." *Colony Ins. Co. v. Victory Const. LLC*, 239 F. Supp.3d 1279, 1282-83 (D. Or. 2017) (internal quotation marks and citation omitted, alterations normalized). The court, considering only the allegations in the complaint, determines whether any of the allegations could support a covered claim against the insured. *See Marleu v. Truck Ins. Exchange*, 333 Or. 82, 91 (2001) (recognizing that "[i]t is the substance of the complaint, not its form, that is at the heart of the inquiry.").

## II. The Breach of Contract Suit Does Not Allege "Property Damage" or "Bodily Injury"

Defendant contends that the underlying complaint in the breach of contract action does not allege "bodily injury" or "property damage" that would trigger coverage under Defendant's Policy. As discussed above, this issue must be resolved

by comparison of the complaint in the underlying action and the terms of Defendant's Policy, without reference to other materials. Here, the coverage form for Defendant's Policy provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> \*         \*         \*
>
> This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
> (3) Prior to the policy period, no insured . . . knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Obernesser Decl. Ex. 1, at 24.

Defendant's Policy defines "property damages" as

a. Physical injury to tangible property, including a resulting loss of the use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused.

Obernesser Decl. Ex. 1, at 38.

The operative complaint in the breach of contract lawsuit alleges that PPM was grossly negligent in its performance of its duties as property manager. Baker Decl. Ex. 1, at 1. "As a result, Birdnest was sued by two of the Park's tenants for habitability violations under Oregon's Residential Landlord and Tenant Act." *Id.* at 2. "Birdnest seeks to recover the attorney fees and money awards arising from that lawsuit, all of which are attributable to PPM and the direct result of PPM's breaches of the management agreements[.]" *Id.*

In *General Ins. Co. of Am. v. W. Am. Dev. Co., Inc.*, 43 Or. App. 671 (1979), the Oregon Supreme Court considered a case where purchasers of mobile homes sued the developer for failing to disclose an easement on the properties that rendered them substantially less valuable and forced some of the purchasers to move. *Id.* at 673. The developer tendered the suit to its insurer for defense, but the insurer refused the tender. *Id.* The Oregon Supreme Court held that the insurer was not obliged to defend the developer because "the purchasers claim only that the property which they bought was worth less than they expected, and that, in some cases, they had to pay unexpected moving expenses," and that this was not an allegation of the "loss of use of tangible property" as required for coverage under the policy. *Id.* at 675.

Likewise, in *Drake v. Mut. of Enumclaw Ins. Co.*, 167 Or. App. 475 (2000), an insurer was determined to have no duty to defend in a suit against the insured alleging that the insured had interfered with the prospective inheritance of the insured's sister. *Id.* at 477-479. The Oregon Court of Appeals held that "[b]ecause she did not allege that she had been deprived of the use of any tangible property,

Connell's economic losses did not constitute property damage under the policy," and so "none of Connell's claimed economic damages arose from a covered event." *Id.* at 484.

Together, *Drake* and *General Insurance Co.* demonstrate that a distant and attenuated connection to "property" will not be sufficient to trigger an insurer's duty to defend under a policy covering property damage.

In this case, the Court is confronted with such an attenuated connection. While the underlying complaint discusses the earlier suits brought by the Currins, the substance of the suit is not one for damage to the Park's septic system or damage to any other property. Nor does the underlying complaint incorporate the Currin lawsuits by reference, either explicitly or implicitly, as Plaintiff suggests, and the question of whether Defendant might have been obliged to defend or indemnify in those earlier cases is not before this Court.

Rather, in the underlying complaint, Birdnest seeks to recover from PPM the sums Birdnest was obliged to pay out to the Currins because of PPM's alleged failure to discharge its responsibilities as property manager. The complaint does not, on its face, allege a claim for either physical injury to tangible property or the loss of use of tangible property. Nor does it allege any bodily injury. As such, the claim is not covered by Defendant's Policy and so Defendant has no duty to defend in the underlying breach of contract action. The Court need not reach the other arguments raised by the parties. Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment, ECF No. 22, is GRANTED and Plaintiff's Motion for Summary Judgment, ECF No. 20, is DENIED.

It is so ORDERED and DATED this 11th day of August 2023

                                     /s/Ann Aiken  
                                     ANN AIKEN  
                                     United States District Judge